Case number 20-7113, Hulley Enterprises Ltd. et al. Appellants v. Russian Federation. Mr. Sheppard for the appellants, Ms. Lamb for the appellate. Good morning, Your Honours. Sheppard, please proceed when you're ready. Thank you. Good morning, Your Honours, and may it please the Court, Stephen Sheppard, for petitioner's appellants. I respectfully request two minutes for rebuttal. Your Honours, three factors distinguish this case from the typical confirmation proceeding under the New York Convention. And together, these three make the stay order in this case clearly wrong. First, this case- Can I just ask you at the outset, I'm sorry, I really, I apologize for interrupting you right at the beginning as you're getting started, but I'm just curious where we are in this case now, because we have a communication from the Judge Supreme Court saying that it's going to issue its decision on November 5th, which is just a few days from now. And the District Court stay order expires of its own force when there's a resolution in the Dutch Supreme Court. So is there every reason to suppose that this entire matter just goes, this part of the matter goes away on November 5th? Your Honour, there is a possibility that the Dutch Supreme Court, if it rules as we hope and expect it will, would render moot the petition for mandamus that we have filed directed at the stay. Of course, Your Honour, we don't know how the Dutch Supreme Court is going to rule and the communications we've sent to the court don't indicate one way or the other what the ruling will be. But in terms of whichever direction it rules, that still ends the stay proceeding. I mean, the mandamus proceeding, I guess if there's a reference to the ECJ or something like that, then it's possible that proceeding continues. But apart from that, won't it end the mandamus proceeding? Your Honour, if we were to, if the Dutch Supreme Court were to do as the Dutch Advocate General has advised and dismiss the cassation appeal, that would lift the stay under the District Court's order. If the Dutch Supreme Court were to do as the Russian Federation has urged and refer the matter to the Court of Justice of the European Union, it is at least debatable as to whether that would lift the stay. The stay order in this case refers to resolution of proceedings in the Dutch Supreme Court. And the way the mechanism works is the Dutch Supreme Court proceedings go on after such a referral. There's years of briefing in the Court of Justice for the European Union, and then the case is sent back to the Dutch Supreme Court for more proceedings. If there's a reference, I guess where you're at is, yes, it could end it. If there's a reference to the European Court of Justice, then you think there'd be the argument that the mandamus proceeding continues because there hasn't been a resolution, and so the District Court wouldn't end its stay. But then in that situation, would the reference itself support the proposition that there's no clear and indisputable right to relief because that would suggest the Dutch Supreme Court thinks that there's some pretty significant issues? I would agree that the Russian Federation could be expected to make that argument, Your Honor. We still believe that the mandamus would be appropriate for the reasons that we'd like to address. The first factor that distinguishes this case, Your Honor, is the excessive length of time that's been going on. Eighteen years ago, the Russian Federation destroyed Yukos and 16 years ago, the arbitration proceedings began, and seven years ago, the awards were handed down and these confirmation proceedings began. And yet, after all this time, we still don't have a ruling from the District Court in this case as to the threshold issue of the Russian Federation's sovereign immunity. We are still effectively near square one in the District Court. The second factor, Your Honor, is that there is little practical hope that my clients will be able to collect pre-judgment interest from the Russian Federation during this very long stay. In the Stilex case, this court recognized that pre-judgment interest was a dictate of national justice that deters any attempt to benefit from inevitable litigation delay and which is especially relevant in the arbitration context. Here, Your Honor, $7 billion of pre-judgment interest, post-award interest, had already accrued at the time of the stay. We expect and we told the District Court an additional $7 billion would accrue during the stay that the District Court was contemplating and has ordered. We have little practical hope of collecting that. We'd have to first collect on the $57 billion already owed, which may well exceed the non-immune assets of the Russian Federation in this case. This is in the face of a debtor who has made plain by its actions that it has no intention of paying the money that's owed and has been ordered by the awards and in the face of what the District Court called troubling aspects of the Russian Federation's lack of compliance with orders from courts both here and abroad that should weigh heavily in favor of what the District called a bond, what we call security, in order to protect my clients. And the third factor, Your Honor, is the Dutch Court of Appeals opinion. It's extraordinary. It's a 130-page document based on three days of oral testimony, thousands of pages of briefing, and it comprehensively refutes every relevant defense raised by the Russian Federation. The cases that the Russian Federation primarily relies on were state the first decision from the Hague District Court decided just one defense that the Russian Federation had raised. That was the issue of whether the Russian Federation had agreed to arbitration in the Energy Charter Treaty. That turned on Article 45, which deals with the provisional application of the treaty after it had been signed. That one issue, has been comprehensively refuted by the Court of Appeals, which did it in two ways, both as an interpretation of the Energy Charter Treaty, but also the Court of Appeals assumed that the Russian Federation was right about how to read the Energy Charter Treaty. And it then went on to make findings of Russian law, finding that provisional application of the arbitration provision would not be inconsistent with Russian law. That's section 4.7 of the Court of Appeals opinion. And it's in the record, Your Honor, beginning at page 1496. That opinion, that finding of Russian law is not subject to direct review in the Dutch Supreme Court in the Cassation Appeal. The standard of review, which is not in dispute, and it is discussed by Mr. Jehoram's declaration, the Dutch counsel of my clients, particularly I invite the court to review his declaration at page 1681, where he discusses how the Dutch Supreme Court cannot review the legal correctness of this finding. And at 1673, where he describes the standard of review that will apply. In the face of these three factors, Your Honor, the district court's reasons for the second state were clearly wrong. There were essentially three when you boil them down between the discussions of the two standards. First, the district court said briefing may be easier after everything is done in the Dutch court. Second, litigation quagmire and third, international comedy. Those reasons, in short, Your Honor, would apply in every single confirmation proceeding. And if allowed to support the stay here, they would return this jurisdiction to the pre-New York Convention regime, the Geneva Convention, in which you always had to exhaust all appeals in the primary jurisdiction before confirmation. I see I'm going to have a problem. I mean, I'm trying to cut this case back to two questions that are before us. Mandamus, and you have an extraordinary burden on Mandamus in any case, coming to this court in order to be able to get relief. And I don't know how you can get relief when the New York Convention allows a secondary jurisdiction court to issue a stay if the district court judge feels it's appropriate because the matter is being considered in the court with primary jurisdiction. You clearly have that here. It's not, honestly, not compelling to me that the Court of Appeals opinion is extraordinarily favorable to you. That begs the point. Begs the point that the matter that the district court is waiting for is not yet done because it's at the Dutch Supreme Court. So, so what? The Court of Appeals decision is impressive for your purposes. And I'm thinking in terms of Mandamus. So, that's a really compelling consideration against you. The authority to issue a stay under the New York Convention. It's absolutely clear that they have this authority if you're waiting for another decision. And that's all they did. And so, in terms of Mandamus, I don't know how you get over that. In terms of the, the, the, the, on the other question, I think what the court said was it's finding, is it wrong? That they rested on the conclusion that the Russian Federation has significant U.S. assets that could be seized to satisfy any judgment. That's a district court finding justifying the point, the second point that you're contesting. Unless I find that that's completely wrong, I don't know how I get to your second point. I, and I don't understand what you're meaning to say about failure to make a decision on sovereign immunity. You're throwing that in as, I'm telling you my impression. It comes in as kind of a, gee, that's unfair. You know, maybe it is, but I'm not sure how to weave that into the legal analysis when the court clearly has the right to issue a stay pending disposition in a foreign court. So, I'm not sure are you meaning to say that that somehow changes if they fail to issue a and you, you, you mentioned it again today in passing, but I'm not sure where you're putting it. They have the right, the district court has the legal authority to issue a stay under the New York convention. And you're, you're asking for mandamus and I'm, as a judge, mandamus is, we almost never give mandamus because it's such a hard standard to meet. And it seems to me possible here when the court is acting pursuant to legal authority, which says, I can wait if I think it's appropriate. I think it's appropriate to wait. On the mandamus point, your honor, we referred to the Belize social case, which noted that mandamus is appropriate in New York convention cases, given the emphatic federal policy in favor of arbitral dispute resolution, turning to the second point security. The New York convention, I'm looking at as a judge on a panel that has this case where the district court judge, when you're trying to mandamus, it says there's another decision pending. And the New York convention says I can issue a stay and wait to see what the other court says. How can I give mandamus in that situation and tell you candidly, my view is I can't, I know there are other considerations about speed, but we're so far past speed. Right. And I say that respectfully. We're long past that. We'll all be retired before this thing ends, the way it's going. But I don't know how you get mandamus. And then on the second point, the court is saying I'm making a finding that there's enough money here to satisfy judgment in the event that it comes to that. So on the second point, your honor, respectfully, the court made no finding and received no evidence. And in fact, the district court's opinion mentioned incorrectly referred to global assets abroad. I think we could all assume that the Russian Federation, if you include the assets within that jurisdiction within Russia, exceed $57 billion. But the district court's authority in this confirmation proceeding, as your honor rightly points out, refers to assets in the United States. There's no evidence of assets anywhere close to 50. So you're saying it's not a finding that can be accredited by us. It's simply language in an opinion that has no basis, is your view? Yes, your honor, it's not a factual finding. The district court received no evidence. And moreover, the primary reasons for denying security were the erroneous legal presumption against awarding security and the district court's failure to decide its sovereign immunity. This is a sovereign immunity question. Article six of the New York convention, which your honor is looking at. Where you want the sovereign immunity to be in play? Yes, the district court denied us security, because it said I've stayed my decision on sovereign immunity. Can I ask you on sovereign immunity on waiting to decide sovereign immunity? Usually, there's a there could be a problem with waiting to deny sovereign immunity, because the sovereign wants its immunity resolved. This is kind of an odd situation, because this sovereign actually doesn't want its immunity, right? It's in favor of the state. And so it's it's a little bit. I mean, this case is, is either side could accuse the other side of being rich, because you both have made a lot of arguments at this stage that are exactly contrary to the arguments you both made previously, because the interest in a state has switched. One of you wanted to stay before and want the other one wanted to deny it. And now the one who wanted to deny it previously wants it and the one who previously wanted it wants to deny it. In terms of sovereign immunity, where we are now, whatever Russia said, initially, when it has its initial position, it doesn't want sovereign immunity decided right now, as I understand it, because it wants to stay. So it's I don't know about the force of requiring a court to resolve foreign sovereign immunity when the foreign sovereign doesn't want its immunity resolved. Well, Your Honor, to address that point, foreign sovereigns who are facing a confirmation proceeding, rarely would like the sovereign immunity or anything else resolved, the debtor always seeks to stay and always points to the set aside proceeding. In this particular case, Your Honor, Article Six of the New York Convention, which Judge Edwards was referencing, not only gives the district court power to enter a stay, but also says that it may order the respondent to give suitable security. You're absolutely right on that. There's no question that that's, that's there. And what we're asking for in our second point, and by the way, this is a collateral order appeal of the denial of security, which everybody agrees. So the mandamus standard does not apply. What we're asking for is a fair here. And I'm not confused on that. I understand that point. They're different standards of review. And there's legal errors that should be reversed and at the very least vacated. It's an error to deny us a fair hearing on security based on a sovereign immunity issue that the district court refuses to decide. If that's going to be the basis, and it is particularly important to hear that the district court indicated in these two pages of its opinion, that there are troubling points about this case and the Russian Federation's lack of compliance with orders that weigh heavily, those are the district court's words, in favor of granting a security. But it decided that we couldn't have hearing on that. We wouldn't get a chance to exercise our right to ask for this under article six of the New York convention, because the district court didn't want to decide the issue. And instead it stated that combined with an incorrect legal presumption against ordering sovereigns to pay security never adopted by this court are the two legal errors that are directly before this court. And we think Kenan should be reviewed. I see my time is up. If there are no for rebuttal. Thank you. Lam will hear from you now. Yes. Good morning, Your Honor. Carolyn Lam with White and Case on behalf of the Russian Federation. We have a completely different view, as you might imagine. First of all, we are not in a New York convention proceeding. We're way before that. That's merits. The court has not decided jurisdiction under the FSIA, and the court has not decided the New York convention issues at all. The stay that she issued was a Landis stay, a stay under the Landis decision of the Supreme Court that is preliminary to the jurisdictional determinations and the merits determinations. And the question is, how did we get here? Why has it taken so long that Mr. Shepard complains about? We got here at the outset because they asked for it. In fact, after the decision of the arbitral tribunal, they sought a petition here to enforce that decision and in France and in the UK and in six other countries. What's wrong with that? Pardon me? What's wrong with that? I'm just explaining it. I'm going to tell you what's wrong with what he's saying now. But I want to understand your you're you're suggesting that seeking enforcement of an arbitration order in multiple jurisdictions is somehow problematic. I just thought that's the way things these things happen. Is there something actually wrong with that? Well, it's wrong with it. If in fact, we have immediately a request to set aside the award of the tribunal. And at the same time, the Russian Federation wanted its immunity determined. They we immediately filed motions to dismiss the petition to on the basis of the foreign you want your immunity decided now. As yes, but not at this moment, of course. Well, and for good reason. For good reason. And we still have immunity to be sure. Because the Dutch Supreme Court is deciding the energy charter treaty, where issue article 45, one, whether the Russian Federation was solely a signet tour, and therefore only agreed provisionally to apply the treaty consistent with its laws and its laws do not permit arbitration in tax cases in public cases, etc. It never ratified the treaty. It never was a contracting state that offered arbitration. It didn't offer arbitration or any of the benefits of the treaty to Russian investors, which they were operating through tax haven shells. And it never agreed to offer arbitration to have the context here, where we've got money laundering tax fraud, fraud and corruption on their part. One of the claimants before you petitioners before you in fact, we've traced and it's in the motions pending in front of this court, a $600 million payment in the initial privatization to get their shares. Now, I like to think this court is not going to ignore all of that. And all of those issues, and then some are pending in front of the Dutch court on the set aside, he makes light of the Dutch court proceeding saying, we're going to win just like the advocate general said, well, we already won once on the article 45 ground. We've already won once in the UK court, where they continue to stay saying the probability of success on the merits. Let me ask, can I ask you something? Yeah, your motion to the district court on sovereign immunity still pending? Yes, that's what he moved to stay in. I'm just I'm just trying to get it straight in my head. So your motion for sovereign immunity is, I don't understand what would be the problem for this court to with this court, sending it back to the district court and answer to that question, say decide the question of sovereign immunity, and then decide the question of security, depending on your, your, your answer? Well, in fact, your honor, in the term Rio case, and in the get my vegan a case, you know that the primary jurisdictions decided, in fact, to annul the awards. If that is the result in the Dutch court, why should I know parochial? I just want to be a little minded judge here, take the little case that we have before us on appeal, we got two questions, mandamus. And we got the absence of security, which you both are tying to an absence of decision on sovereign immunity is the answer to the second issue for us to send it back to the district court and say, you cannot continue to hold up the request for security until you've decided that sovereign immunity question, you've got the motion before you decide it. Your Honor, no, is that wrong? That's wrong. Because at this point, all of the same issues would have to be decided by the district court. No, they wouldn't. The respect to the request for a stay, I'm waiting to see what the Dutch court is. Exactly. I've got another motion before me, the district court says the sovereign immunity, it, it is a motion, it has to be decided that courts not doubting that. And the answer we're getting with respect to the request for security as well as no answer on sovereign immunity. Why isn't the appropriate answer for this court to tell the district court decided and then decide the question on security? Because it is entirely appropriate, given the many factors that the court considered to respect to what? With respect to refusal to decide the question on sovereign immunity. In other words, I don't, I honestly don't understand when I first prepared the case, and I still don't understand why doesn't the district court go ahead and decide the question on sovereign immunity? Because she will be deciding the very issues, albeit under US law, that are pending in front of the Dutch court. And to go through all of the remaining briefing, and all of the remaining effort by the parties, when in a few weeks, it could be thrown out entirely, is not what a land is staying. Why wouldn't our order say in a few weeks when we know what the Dutch unless everything is gone, by virtue of the decision from the Dutch court beside the question of sovereign immunity? Well, Your Honor, it may all be gone. It may not all be gone. And I'm just asking, I'm trying to be as practical as I can. Why don't we just have it Well, actually, Your Honor, it's more complicated than that. Well, I understand it might involve some complicated questions, but I'm still trying to understand why is that inappropriate? It's inappropriate because the Dutch court, of course, is part of the EU. And the interpretation and application of the Energy Charter Treaty, as you can see from the Comstroy decision, is something that the ECJ will decide and opine on. So at the outset, when you initially filed your motion on sovereign immunity, I assume that you wanted a decision. You didn't say that we're filing a motion for sovereign immunity. But you know, hold on to it, because there's a bunch of stuff going on in the Netherlands that are bound up in this. So we just want you to take hold of it. I thought at the outset, you actually wanted to decide it at a time. We did, because we had confidence in the U.S. courts that they would apply the rule of law, and they would, in fact, decide that there was an absence of any offer of an agreement to arbitrate here, that there was fraud and corruption at the outset, that they were less than candid with the arbitral tribunal in withholding documents and providing false statements, so that this is not an award that we ever think will be enforced. Why? The court does have to reach a very high threshold in terms of determining whether the district court exceeded her authority. This is exactly the kind of decision that Sinochem contemplates, a preliminary Landis stay. They asked for the Landis stay. We both- And you opposed it. We did oppose it. But then, after the Dutch court decided in our favor, we- Is there further review after the Dutch Supreme Court? I don't know all the intricacies of how that system operates. Not by a Dutch court. By the Dutch court. But there could be by the ECJ if certain issues were referred, or there could be other international proceeding. So in any event, it is, in fact, not finished, I'm sure. And we also have a variety of issues under the New York Convention. But this isn't a New York Convention stay under Article 6 at all. This is a Landis stay under the Landis Supreme Court decision. And she had complete discretion to do what she did on the record that was before her. Let me make sure my colleagues don't have additional questions for you, Ms. Lamb. No. Thank you, Ms. Lamb. We'll give you two minutes for rebuttal, Mr. Shepherd. Thank you, Your Honor. Can I start by just asking one clarification question, which is for the security issue, the request for posting of security was for security pending the resolution of this stay, right? It's pending confirmation, Your Honor. When security is ordered, it's paid into the registry of the court. So it's there that once the awards are confirmed, the money can be paid to the creditor. So if the stay evaporates, because let's just suppose on November 5th, the Dutch Supreme issues a decision that the district court concludes as a resolution such that the stay goes away, what happens to the security part of the case? It's a complicated question, Your Honor, that we need to think about. Okay. The stay becomes moot if the case goes away in the Dutch Supreme Court. Security, I don't think, would become moot. So three points, Your Honor, in response to Ms. Lim's presentation. One, our response brief on the FSIA issues is in the district court record. It's docket 63. We explain why there is no sovereign immunity under section 1604 from this suit. All that's needed to be done is to update that with the Stillex decision, which makes even clearer that there's no sovereign immunity here. The only possible issue would be whether there is an agreement to arbitrate. That is the article 45 question Ms. Lim refers to. And that is the one I referred to in my opening that has been decided already by the Dutch as a matter of Russia law, which is not subject to review. Finally, Your Honor, it is simply wrong to say that there's a land to stay different from a New York convention stay. That's contrary to the Belize social case, where there was a foreign sovereign immunity defense not ruled on by the district court. This court considered that a New York convention issue, the granting of a stay. There was no distinction between the two. The same was true in Stillex, Your Honor, where this court acknowledged the inherent authority doctrine, citing Clinton v. Jones, a Landis case, but also said the district court would have used its discretion if it were not to consider the two year of the car factors. There aren't two frameworks, Your Honor. There's one framework, and this has always been a New York convention case with a pro enforcement bias. I see my time is expiring. I'm perplexed by your answer to the chief judge that you're confused about the security issue if the Dutch, depending upon what happens with the stay, if the Dutch court goes the way you're concerned and security has been posted, what's the confusion? There would be no confusion there, Your Honor. In that case, we would have gotten what we're entitled to under the security provision of Article 6. And the security would go back. I mean, it would not remain available to you. No, it would be with the district court, Your Honor. Security would never be paid to us. It would be paid to the district court. But it's to protect any judgment. Isn't the security to protect any judgment that you might get in the district court? Yes, Your Honor. Okay. If you can't get a judgment. And that's shown in the warranty. Yet, if you can't get a judgment because of what happens with the Dutch court, then the security is dissolved. Whatever the appropriate piece of paper is that signed, it's no longer available. Yes. Yes, Your Honor. Well, I'm not sure what you're confused about then. I'm sorry. My confusion was whether the appeal of the denial of security would become moot. Maybe I misunderstood the Chief Judge's question. That's the complication. But to Your Honor's point, absolutely. If we lose this confirmation proceeding, security goes back to the Russian Federation. When it comes to us. In the meantime, it stays with the district. Okay. Thank you. Thank you, Your Honor. Thank you, counsel. Thank you to both counsel. We'll take this case under submission. Thank you.
judges: Srinivasan, Henderson, Edwards